ALBERT BANDMAN, Plaintiff, v. WILLIAM E. FINN, Defendant.

*Real estate broker's commissions — what agreement in respect to the payment of a less sum is ·neither an accord and satisfaction nor a novation — what constitutes a novation — concealment by the owner of the fact that negotiations for a sale were practically consummated.*

One Schmidt, a real estate broker who had effected a sale of certain real estate to one Finn, entered into a written agreement by which Finn agreed in the event of a sale of the premises to pay him $8,600 on the consummation of said sale. Thereafter Schmidt placed his claim against Finn in the hands of an attorney. The negotiations between the attorney and Finn resulted in an offer by Finn to pay $2,500 and $250 counsel fee for the surrender of the written agreement and the delivery of a general release executed by Schmidt. Schmidt, upon being notified of the offer, stated that he would accept it, and a time and place were then appointed for the closing of the transaction. Schmidt appeared at the place appointed, his attorney's office, shortly before the time agreed upon, but left for the purpose of getting the original written agreement. Shortly thereafter Finn appeared at the attorney's office and produced two uncertified checks, one for $2,500 and one for $250, and stated that he would deliver the same upon receipt of the written agreement and a general release. The attorney, who did not have the agreement, did not accept the checks or deliver a release. · Schmidt did not return and Finn left.

At the time these negotiations were in progress, Finn had practically consummated a sale of the premises which was subsequently perfected, but he did not disclose that fact to Schmidt.

*Held,* that the transaction did not amount either to an accord and satisfaction or to a novation.

A novation is the substitution of a new contract for an old one, which is thereby extinguished. Whatever rights there may be in the parties to the old contract are merged in the new, which in and of itself destroys the old, and thereafter the remedy of either party, in a case of a breach, is upon the new contract, according to its terms.

MOTION by the plaintiff, Albert Bandman, for a new trial, upon exceptions ordered to be heard at the Appellate Division in the first instance, upon the verdict of a jury, rendered by direction of the court, after a trial at the New York Trial Term.

The issues were brought to trial at a Trial Term held in April, 1904, in New York county. The court, refusing to direct a verdict in favor of the plaintiff for $8,600, granted the defendant's motion for a direction in favor of the plaintiff for $2,500.

*Edward M. Shepard,* for the plaintiff.

*Abram I. Elkus,* for the defendant.

McLAUGHLIN, J.:

The plaintiff, as the assignee of one Herman Schmidt, brought this action to recover $8,600, a balance alleged to be due for commissions in the sale of certain real estate in the city of New York.

The real estate referred to was owned by the Hilton estate, and the fact is not disputed that the sale of it to the defendant was brought about by Schmidt, and by reason thereof he became entitled to receive certain commissions. In settlement of these commissions at the time of the conveyance the defendant executed and delivered to Schmidt the following agreement:

"NEW YORK, *May 14th,* 1902.

"I, William E. Finn, in consideration of H. Schmidt executing a release of claim for commission to Horace Russell and Edward D. Harris, as Executors, etc., do hereby agree to pay to said H. Schmidt One thousand dollars on passing of title 726–730 Broadway and 31–39 Lafayette Place, which closing has been set down for May 15th, 1902, and to further pay him the additional sum of Eighty-six hundred dollars on completion of roof of contemplated building on said premises. In the event of a sale of these premises, I agree to pay said H. Schmidt said Eighty-six hundred dollars on consummation of said sale."

On receiving this agreement and the $1,000 therein mentioned Schmidt executed and delivered to the Hilton estate the release referred to. Some time in the month of November, 1903, the defendant entered into negotiations for the sale, of the premises referred to, to one Wanamaker, who, on the twenty-fourth of November, signed a contract, which was delivered to the defendant on the following day, to purchase the premises, and a deed of conveyance was executed and delivered on or about the second of January following. In October, 1903, Schmidt placed his claim for commissions in the hands of an attorney, Mr. Levy, with instructions to settle the same. Negotiations were carried on between the attorney and the defendant until the twenty-third of November, when Finn offered to pay $2,500 and $250 counsel fees for the surrender of the

FIRST DEPARTMENT, APRIL, 1905.                    [Vol. 103.

agreement above quoted and the delivery of a general release by Schmidt. This offer was reported by Mr. Levy to Schmidt, who said he would accept it, and thereupon, November twenty-fifth at three o'clock in the afternoon was fixed as the time, and Levy's office as the place, for closing the transaction. On the day appointed, shortly before three o'clock, Schmidt went to his attorney's office and he was then asked if he had the original contract. He said he had not, but would go and get it. He then left the office and did not return. Shortly thereafter the defendant appeared and produced two checks which were not certified, one for $2,500, and one for $250, and said in substance that he would deliver the same, but when he did so he wanted the contract referred to and a general release. The attorney did not have the contract, nor did he accept the checks or deliver a release. After waiting a short time the defendant left and this constitutes all that was done with reference to a settlement of the claim for commissions.

At the conclusion of the trial, the foregoing facts having been made to appear, plaintiff moved for the direction of a verdict for $8,600, and defendant moved for the direction of a verdict for $2,500. Plaintiff's motion was denied and defendant's motion granted and the exceptions taken by plaintiff ordered to be heard in the first instance at the Appellate Division.

The trial court, as appears from the opinion delivered (43 Misc. Rep. 516), held that the transaction did not amount to an accord and satisfaction, and in this he was undoubtedly correct. At the time defendant offered his check for $2,500 in satisfaction of Schmidt's claim, negotiations with Wanamaker had so far progressed that a sale of the real estate to him was practically assured, and when they ripened into a conveyance, Schmidt was entitled, under the agreement, to $8,600, and in negotiating for a settlement the defendant could not keep Schmidt in ignorance of the fact that there then had been or was about to be executed by Wanamaker a contract to purchase. Honesty and fair dealing required that he should make this disclosure. Otherwise the parties were not dealing on an even plane. Besides, the check was not delivered, and the negotiations never resulted in a settlement of the claim. But the court held that while the facts enumerated did not amount to an accord and satisfaction, they did amount

to a novation, and in this I think he erred. A novation is the substitution of a new contract for an old one, which is thereby extinguished. Whatever rights there may be in the parties to the old contract are merged in the new, which in and of itself destroys the old, and thereafter the remedy of either party, in a case of a breach, is upon the new contract, according to its terms. When the facts here are considered, it at once becomes apparent there was not a novation. The negotiations which were carried on between the defendant and Schmidt were to settle and compromise Schmidt's claim for $8,600. This claim was placed by Schmidt in his attorney's hands to enforce, and through negotiations commenced by him the terms of a proposed settlement were agreed upon. The proposed settlement was to be a written release of the claim asserted by Schmidt, his surrender of the original contract, and the payment of $2,500, in addition to $250 counsel fee. There is not a suggestion in any of the negotiations that there was to be a new contract or that anything was to be done except the satisfaction of the old one, a mere composition and settlement of an asserted claim and nothing else. The negotiations were oral and there was nothing in the language used by any of the parties which would justify even an inference that a new contract was to be made or anything done but the extinguishment of the claim made under the old agreement. Defendant was willing to pay the amount named on receiving from Schmidt a general release and a surrender by him of the old contract. Until that was done the old contract remained in force. It never was done.

The case of *McIntosh* v. *Miner* (37 App. Div. 483), cited by the defendant's counsel, is not in point. In that case, when the new agreement was made, the plaintiff did not have a money claim, or any claim which could then be enforced. Plaintiff was an actor. He had an agreement with the defendants to perform services in the future for the compensation of $100 a week, to be paid as the services were performed. Before any services had been rendered, or any money had become due, the actor proposed the substitution of a new agreement for the old one. He asked that he be released from his future obligations to act and promised to release the defendants from their obligation if they would pay him $400. Defendants accepted the proposition and promised to pay the $400. Subsequently, the time having arrived for him to act under the

original agreement, plaintiff insisted that the agreement was in force, and the sole question presented was whether the abrogation had taken effect at the time defendants promised to pay the $400. It was held that the new agreement was complete when the parties mutually agreed that the employment should cease and that that agreement took the place of the old one.

In *Hartwig* v. *American Malting Co.* (74 App. Div. 140) the decision was put upon the ground that a distinct agreement to pay a definite sum in discharge of the old contract had been made. Mr. Justice PATTERSON, delivering the opinion, said : " The plaintiff discharged the defendant from the contract in consideration of its promise to pay that liquidated amount."

In this case there was no satisfaction or discharge of the old contract. No money was paid. The contract was not surrendered nor was a release given. It is undoubtedly true that the defendant was eager to carry out the agreement. Well he might have been. His contract obligated him to pay Schmidt when the conveyance was made, $8,600. He knew at the time he went to the office of Schmidt's attorney that Wanamaker had or was about to execute a contract to purchase and that as soon as the title had been passed a conveyance would be made and thereupon, if he kept his agreement, he would have to pay Schmidt $8,600.

I am of the opinion that the exceptions should be sustained, the verdict set aside, and a new trial ordered, with costs to plaintiff to abide event.

VAN BRUNT, P. J., PATTERSON, INGRAHAM and LAUGHLIN, JJ., concurred.

Exceptions sustained, verdict set aside, and new trial ordered with costs to plaintiff to abide event.